UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  4:16cv00210  PLC |
| | ) | |
| ROYAL PACIFIC FUNDING CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion for summary judgment filed by Plaintiff CitiMortgage, Inc. ("CMI") (ECF No. 46) and the motion to strike CMI's supplemental affidavit filed by Defendant Royal Pacific Funding Corp.[1] (ECF No. 68).  Plaintiff's motion for summary judgment is granted as to liability and denied as to the amount of damages.  Royal Pacific's motion to strike is denied.

### I.    Factual Background

CMI purchases closed mortgage loans from approved lenders, including lenders known as "correspondents,"[2] under its Loan Purchasing Program.  CMI functions as an investor in the secondary mortgage market and resells some of the purchased loans to Fannie Mae, Freddie Mac, and other investors in the secondary mortgage market.

CMI used a standard contract, entitled "Correspondent Agreement Form 200," to purchase residential mortgage loans from loan originators and correspondents.  The Form 200 expressly incorporated a longer document titled the CMI Correspondent Manual, which

---

[1] The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).
[2] The glossary contained in the CMI Correspondent Manual defines "correspondent" as:  "An individual institution or organization who originates mortgages on behalf of or for purchase by seller."  (ECF No. 49-7 at 2301-3).

contained more detailed terms and conditions.  (ECF No. 49-3, Pl.'s Ex. B, § 1 (incorporating the Manual); ECF Nos. 49-4 – 49-7), Pl.'s Exs. C-1 – C-4 (the Manual)).

CMI and Royal Pacific entered into a Correspondent Agreement Form 200, DBA Addendum, and Delegated Underwriting Addendum on March 12, 2007, and a second, nearly identical Correspondent Agreement Form 200 on February 5, 2008 (collectively, "the Agreement").  The Agreement required Royal Pacific to deliver certain loan documentation to CMI for each loan it sold to CMI, and it gave CMI the right to require Royal Pacific to cure or repurchase any loan that CMI deemed defective.  (ECF No. 49-3).

In regard to Royal Pacific's obligation to cure or repurchase defective loans, Section 11, entitled "Cure or Repurchase," provided, in relevant part:

> If CMI, in its sole and exclusive discretion, determines any Loan purchased pursuant to this Agreement:
> (i)    was underwritten and/or originated in violation of any term, condition, requirement or procedure contained in this Agreement or the CMI Manual in effect as of the date CMI purchased such Loan,
> (ii)   was underwritten and/or originated on any materially inaccurate information or material misrepresentation made by the Loan borrower(s), [Royal Pacific], [Royal Pacific's] directors, officers, employees, agents, independent contractors and/or affiliates, or any other party providing information relating to said Loan.
> ….
> (iv)   must be repurchased from any secondary market investor (including but not limited to the Fannie Mae, Freddie Mac, FHA, VA, HUD or Government National Mortgage Association) due to a breach by [Royal Pacific] of any representation, warranty or covenant contained in this Agreement or the CMI Manual or a failure by [Royal Pacific] to comply in all material respects with the applicable CMI Manual terms, conditions, requirements and procedures;
> ….
> [Royal Pacific] will, upon notification by CMI, correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI.  If, after receiving such notice from CMI, [Royal Pacific] is unable to correct or cure such defect within the prescribed time, [Royal Pacific] shall, at CMI's sole discretion, either (i) repurchase such defective Loan from CMI at the price required by CMI ("Repurchase Price") or (ii) agree to such other

remedies (including but not limited to additional indemnification and/or refund of a portion of the Loan purchase price) as CMI may deem appropriate.

(ECF No. 49-3, Agreement § 11).  The CMI Correspondent Manual defined "Repurchase Price" as:

> the sum of:  (i) the current principal balance on the loan as of the paid-to date; (ii) the accrued interest calculated at the mortgage loan Note rate from the mortgage loan paid-to date up to and including the repurchase date; (iii) all unreimbursed advances (including but not limited to tax and insurance advances, delinquency and/or foreclosure expenses, etc.) incurred in connection with the servicing of the mortgage loan, (iv) any price paid in excess of par by CitiMortgage on the funding date, and (v) any other fees, costs, or expenses charged by or paid to another investor in connection with the repurchase of the mortgage loan from such investor but only to the extent such fees, costs and expenses exceed the total of items (i) through (iv) above.

(ECF No. 49-7, Manual at 2301-6).

The Agreement made clear that Royal Pacific bore the risk of defective loans, as Section 1 stated:

> CMI may purchase Loans with or without conducting a complete review of the Loan documentation.  CMI's review of, or failure to review, all or any portion of the Loan documentation shall not affect CMI's right to demand repurchase of a Loan or any other CMI right or remedy provided by the Agreement.

(ECF No. 49-3, Agreement § 1).   In addition, the Agreement contained an indemnification provision, which provided:

> [Royal Pacific] agrees to indemnify and hold CMI harmless from any and all claims, actions and costs, including reasonable attorneys' fees and costs, arising from (i) [Royal Pacific's] performance or failure to perform under the terms, conditions or obligations of this Agreement or the CMI Manual . . .; [and/or] (ii) any fraud, misrepresentation or breach of any representation, warranty or covenant contained in this Agreement or the CMI Manual . . . .

(ECF No. 49-3, Agreement § 10).

Since 2007, Royal Pacific has sold to CMI under the Agreement over 1,480 loans, "the combined funded amount of which total[ed] over $382,185,000.00."  (ECF No. 49, ¶ 24).  CMI

determined that eight of the loans ("Loans") it purchased from Royal Pacific contained material misrepresentations and misstatements or were otherwise defective.[3]  (ECF No. 49, ¶ 43-70).

CMI sent "Citing Notification Letters" to Royal Pacific identifying the defects in each of the eight Loans and providing Royal Pacific "the opportunity to investigate the loan discrepancies."  (ECF No.  49, ¶¶ 83-84, Exs. F-3, G-3, H-3, I-3, J-3, K-3, L-3, M-3).  The letters further advised that Royal Pacific had thirty days to "investigate the loan discrepancies" and "provide a satisfactory resolution to the issues cited[,]" after which time "repurchase of this loan may be required per Section 11 of the [Agreement][.]"  (Id.).

CMI subsequently sent Royal Pacific "Initial Repurchase Letters," providing another notice of the loan defects, demanding repurchase of the Loans pursuant to Section 11 of the Agreement, and requesting that Royal Pacific "confirm the repurchase date" on or before thirty days from the date of the letter.  (ECF No. 49, ¶¶ 81-82, Exs. F-4, G-4, H-4, I-4, J-4, K-4, L-4, M-4).  Royal Pacific failed to correct or cure the Loans, and CMI issued Final Repurchase Letters.  (ECF No. 49, ¶¶ 87-88, Ex. F-5, G-5, J-5, I-5, J-5, K-5, L-5, M-5).  Royal Pacific did not repurchase the Loans.  (ECF No. 49, ¶ 90).

## II.    *Procedural Background*

### A.   *CMI's motion for summary judgment*

On February 16, 2016, CMI filed an action for breach of contract.  (ECF No. 1).  In its complaint, CMI alleged that:  Royal Pacific sold CMI the eight defective Loans in violation of the Agreement; CMI determined that the Loans were defective, notified Royal Pacific of the alleged defects, and demanded Royal Pacific either cure the defects or repurchase the Loans; and Royal Pacific failed to either cure or repurchase.  (Id.).  CMI further asserted that it was required

---

[3] The parties refer to the loans in question as the Barragan, Elghazawi, Gonzalez, Lee, Lopez, Perez, Ramirez, and Reyes loans.  (ECF No. 44 at ¶¶ 32-39).

to repurchase the Loans from Fannie Mae and Freddie Mac.  (Id. at ¶¶ 31-39).  In its first amended complaint, CMI claimed that Royal Pacific's "breaches of the Agreement pertaining to the … [Loans] have resulted in total amounts due to CMI in excess of $1,350,000.00, excluding interest and other amounts [Royal Pacific] owes CMI."  (ECF No. 44 at ¶ 29).  Royal Pacific filed an answer and affirmative defenses to CMI's first amended complaint.  (ECF No. 53).

Following the close of discovery, CMI filed a motion for summary judgment, along with a memorandum in support of the motion for summary judgment and statement of uncontroverted material facts.  (ECF Nos. 46, 48, 49).  CMI asserts that it is "entitled to summary judgment on its claim against Royal Pacific because the material facts are not at issue, and the facts demonstrate that Royal Pacific breached its Agreement with CMI regarding the Loans."  (ECF No. 46 at 3).  CMI also states that "each of Royal Pacific's purported affirmative defenses fails as a matter of law."  (Id.).

In support of its motion for summary judgment, CMI submitted, among other documents, copies of the Agreement and Manual as well as the purchase advice, citing notification letter, initial repurchase letter, final repurchase letter, and repurchase authorization for each of the Loans.  (ECF Nos. 49-3 – 49-9).  In addition, CMI provided the affidavit of Rebecca Hancock, one of its repurchase coordinators.  (ECF No. 49-2).  Ms. Hancock averred that:  CMI purchases loans from approved lenders, such as Royal Pacific, and resells them to Fannie Mae, Freddie Mac, and other investors in the secondary mortgage market; the Agreement required Royal Pacific to underwrite each loan it submitted to CMI for purchase; Royal Pacific originated and underwrote the Loans; CMI later learned that Royal Pacific submitted application packages for the Loans that contained materially inaccurate information, material misrepresentations, and/or other defects; CMI repurchased the Loans from its secondary mortgage market investors; CMI

employees conducted post-purchase reviews of the Loans and sent citing notification letters to Royal Pacific; and after determining that each of the Loans contained one or more defects requiring repurchase from the investor, CMI issued internal repurchase authorizations detailing the reasons for the repurchase.  (Id. at ¶¶ 6, 23, 26, 27, 28, 31-38).

In regard to CMI's obligation to repurchase defective loans from its secondary mortgage market investors, Ms. Hancock explained:

> When CMI is required to repurchase a loan from an investor, CMI will remit the repurchase price required by the investor so as to indemnify, reimburse, or make whole the investor for its loss on the loan.  In cases where CMI is required to repurchase an active loan from an investor (where the collateral securing the loan has not been sold), CMI assumes the investor's rights on the loan and services the loan in accordance with its ordinary business.

 (Id. at ¶ 29).   Ms. Hancock set forth the defects identified in each of the Loans and concluded: the Loans were underwritten or originated based on inaccurate or misrepresented information or were otherwise defective requiring correction, cure or repurchase under Section 11 of the Agreement."  (Id. at ¶¶ 31-39).  Ms. Hancock further stated that CMI notified Royal Pacific of the loan defects in initial and final repurchase letters, and Royal Pacific failed to correct or cure the defects or repurchase the Loans.  (Id. at ¶¶ 44, 51, 56).

In response, Royal Pacific filed a memorandum in opposition to CMI's motion for summary judgment.  (ECF No. 59).  Royal Pacific does not challenge CMI's allegations that Royal Pacific breached the Agreement.  Rather, Royal Pacific asserts that questions of material fact exist as to:  (1) whether CMI repurchased the Loans from Fannie Mae or Freddie Mac; and (2) the amount of CMI's damages.  (ECF No. 59).  More specifically, Royal Pacific argued that CMI presented no evidence, beyond the Hancock affidavit, demonstrating that CMI actually repurchased any of the Loans.  (Id. at 4-5).  Royal Pacific also argues that, because seven of the eight Loans were foreclosed upon before Royal Pacific received CMI's initial repurchase letters,

there was nothing for Royal Pacific to correct, cure, or repurchase pursuant to Section 11 and the only available remedy to CMI as to those seven loans was the indemnification provision of Section 10.  (Id. at 6-8).  Finally, Royal Pacific asserts as affirmative defenses that:  (1) CMI's failure to mitigate damages justified "a significant reduction in the damages alleged by CMI"; (2) the statute of limitations precluded CMI's claim based on the Barragan loan; and (3) Royal Pacific was not liable for the alleged defect in the Elghazawi loan.  (Id. at 9-5).

CMI filed a reply in support of motion for summary judgment.  (ECF No. 65).  CMI asserts that  "[t]he fact that an investor foreclosed on or liquidated a mortgage before CMI demanded repurchase of that mortgage from Royal Pacific does not absolve Royal Pacific of its obligation to repurchase the mortgage [from CMI] or preclude a breach of contract claim [by CMI against Royal Pacific] under Section 11 of [the Agreement]."  (Id. at 2).  In support of its position, CMI points to the language of Section 11, which, it argues, accounts for the possibility that CMI might not own the mortgage at the time of repurchase, and this Court's earlier rejection of a similar argument in CitiMortgage, Inc. v. Mason Dixon Funding, Inc., No. 4:09CV1997 TCM, Doc. #226 at 44 (E.D. Mo. Oct. 30, 2012).  (Id.).  Additionally, CMI argues that the repurchase letters and repurchase authorizations that it submitted with the motion for summary judgment constituted "sufficient evidence that it was required to repurchase the seven [foreclosed] loans from Fannie Mae and Freddie Mac and that it paid the amounts to these investors."  (Id. at 6).  As further evidence that it repurchased the seven foreclosed loans from its secondary market investors, CMI submitted with its reply a supplemental affidavit of Rebecca Hancock and, along with other exhibits, three wire confirmations that were not previously produced – namely, Exhibits A, B, and C, wire confirmations for CMI's repurchase of the Lee, Gonzalez, and Ramirez loans.  (Id. at 65-1).

### B.  Royal Pacific's motion to strike supplemental affidavit

Royal Pacific filed a motion to strike the supplemental affidavit that CMI submitted with its reply in support of its motion for summary judgment on the ground that the supplemental affidavit and accompanying documents were "improper and untimely."  (ECF No. 68 at 2).  In its memorandum in support of the motion to strike, Royal Pacific argues that:  (1) Rule 6(c) of the Federal Rules of Civil Procedure provides that "[a]ny affidavit supporting a motion must be served with the motion"; (2) CMI did not produce Exhibits A, B, and C in discovery and therefore they "are not admissible evidence which may properly support a motion for Summary Judgment under Rule 56"; and (3) CMI should not be permitted to use a "reply affidavit" to negate the existence of genuine issues of material fact.  (ECF No. 69 at 3).  In regard to the other exhibits submitted with CMI's reply in support of its motion for summary judgment, Royal Pacific argues that Exhibits D through H were "previously produced in discovery" and "are not wire confirmations or proof of payment at all, but only purported *approvals or authorizations* for a payment to be made."  (Id. at 2) (emphasis in original).

In response, CMI filed a memorandum in opposition to Royal Pacific's motion to strike the supplemental affidavit.  (ECF No. 71).  As an initial matter, CMI asserts that its "repurchase rights under § 11 of the parties' Agreement are not contingent on CMI repurchasing a loan from an investor or making a payment to an investor."  (Id. at 1).  Nevertheless, CMI contends that: (1) the internal repurchase authorizations that it submitted with its motion for summary judgment were sufficient proof of payment in similar cases that CMI won on summary judgment;[4] (2) there is no general prohibition of supplemental affidavits filed with reply briefs; and (3) the documents

---

[4] Ms. Hancock explained that "finding wire transfer confirmations or documentation of 702A deposits for these repurchase payments . . . requires a labor-intensive manual search of the electronic records by one of the few individuals at CMI who has the technical expertise required."  (Id. at ¶ 5).

to which Royal Pacific objects were not "new evidence" and related directly to matters raised by Royal Pacific in its opposition to summary judgment. (Id. at 1-3). With its memorandum in opposition to Royal Pacific's motion to strike, CMI produced a second supplemental affidavit of Rebecca Hancock and a "record of a wire transfer payment [by CMI] for the Lopez loan." (ECF No. 72, Ex. A).

Royal Pacific filed a reply to CMI's memorandum in opposition to Royal Pacific's motion to strike. (ECF No. 74). Royal Pacific reasserts its position that it could neither cure the Loans (as the properties had already been foreclosed upon) nor repurchase from CMI loans that CMI did not own. (Id.). As to CMI's "eleventh hour" production of the three wire confirmations, Royal Pacific argues: (1) the fact that CMI used these types of documents in other cases to prove payment for the repurchase loans is irrelevant to the instant case; (2) the servicing notes previously produced by CMI did not contain the same information as the three recently disclosed documents; and (3) it was "unfair for those documents not to have been produced" prior to Royal Pacific attending mediation and responding to CMI's motion for summary judgment, "thereby depriving Royal [Pacific] of the opportunity to examine and consider them in relation to not only future discovery but also potential settlement." (Id. at 2-4). Similarly, Royal Pacific opposes CMI's production of another only recently disclosed document (the wire transfer payment record for the Lopez loan) with its opposition to Royal Pacific's motion to strike and asserts that it is "mostly unreadable[.]" (Id. at 5). Finally, Royal Pacific maintains: "CMI has still not shown that they are the owners of these [L]oans. There is no assignment or any other document evidencing that CMI has the right to seek damages related to any of the [L]oans." (Id.).

### III.    *Motion to Strike*

As a preliminary matter, the Court will address Royal Pacific's motion to strike CMI's supplemental affidavit submitted with its reply in support of its motion for summary judgment. (ECF No. 68).  District courts enjoy considerable discretion when ruling on a motion to strike.  See Jain v. CVS Pharmacy, Inc., 779 F.3d 753, 758 (8th Cir. 2015).  A court may strike an affidavit or declaration that does not comply with Rule 56(c)(4).  Id.

A party may present affidavits or declarations to support or oppose a motion for summary judgment.  See Fed. R. Civ. P. 56(c)(4).  Rule 56(c)(4) provides:  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Id.

Royal Pacific does not argue that the supplemental affidavit and supporting exhibits do not comport with Rule 56(c)(4).  Rather, Royal Pacific seeks to exclude CMI's supplemental affidavit and its exhibits A, B, and C, as well as the fourth previously undisclosed document that CMI submitted with its memorandum in opposition to the motion to strike, because CMI did not disclose these documents during discovery.  While the Court does not endorse a failure to disclose relevant material during discovery, nothing in Rule 56(c)(4) requires disclosure during discovery as a prerequisite to a court's consideration of an affidavit relating to a summary judgment motion.  Nor does the rule foreclose the possibility of a party filing an affidavit with a reply.

Although Royal Pacific asserts that CMI deprived it of an opportunity to respond to the supporting documentation by appending it to their reply brief, Royal Pacific did not seek leave to file a sur-reply to address any new facts or evidence offered with the reply memorandum.  See,

e.g., Infinity Fulfillment Group, LLC v. Cenveo Corp., No. 4:14CV966 SNLJ, 2015 WL 3823166, at *2 (E.D.Mo. June 19, 2015).    CMI's reply memorandum and supporting documentation were a direct response to Royal Pacific's briefing on the issues, and Royal Pacific cites no relevant authority that would preclude the Court's consideration of supporting documentation or require the Court to disregard it.    Accordingly, the motion to strike (ECF No. 68) is denied.

## IV.    *Motion for Summary Judgment*

CMI argues that it is entitled to summary judgment on its breach of contract claim because Royal Pacific failed to repurchase the Loans as required by the Agreement and, as a result, CMI suffered damages.    Royal Pacific challenges neither the validity of the Agreement nor its obligation to repurchase the Loans.    Rather, Royal Pacific counters that CMI is not entitled to summary judgment because there is a genuine dispute of material fact as to whether and in what amount CMI sustained damages.    Additionally, Royal Pacific contends that, because seven of the eight Loans were foreclosed upon before CMI demanded repurchase from Royal Pacific, those loans no longer existed for Royal Pacific to repurchase.

### A.    *Summary judgment standard*

Federal Rule of Civil Procedure 56(a) provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law determines which facts are critical and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  Id.  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247-48.  Courts must view the facts in the light most favorable to the non-moving party and resolve all doubts against the moving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

    B.  *Breach of contract*

    CMI contends that it is entitled to summary judgment on its action for breach of contract because Royal Pacific breached the Agreement by refusing to repurchase the Loans from CMI. (ECF No. 46).  Royal Pacific argues that CMI is not entitled to summary judgment on its claim for breach of contract because CMI failed to prove that it repurchased the Loans from its secondary mortgage market investors and therefore sustained actual damages.  (ECF No. 59).

    "Federal courts sitting in diversity apply the choice-of-law rules of the forum state." Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009).  "Under Missouri law, a choice-of-law clause in a contract generally is enforceable unless application of the agreed-to law is 'contrary to a fundamental policy of Missouri.'" H & R Block Tax Servs. LLC v. Franklin, 691 F.3d 941, 944 (8th Cir. 2012) (quoting Cicle, 583 F.3d at 553).  It is undisputed that the Agreement included a choice-of-law clause selecting Missouri law to govern the construction of the contract. See ECF No. 49-3 at ¶ 12.  Therefore, the Court will apply Missouri substantive law to the contract claim.

To prevail on a motion for summary judgment for a breach of contract claim under Missouri law, CMI must demonstrate that there was no genuine dispute as to the material facts establishing:  "(1) the existence of a valid contract; (2) the defendant's obligation under the contract; (3) a breach by the defendant of that obligation; and (4) resulting damages." C-H Bldg. Assocs., LLC v. Duffey, 309 S.W.3d 897, 899 (Mo.App.Ct. 2010) (citation omitted).  The fourth element, requiring proof of damages, "does not refer to proof of actual damages; in Missouri a party may recover nominal damages if a breach is established and no actual damages are proven." Monarch Fire Prot. Dist. v. St. Louis County, 678 F.Supp.2d 927, 935 (E.D.Mo. 2009) (citing Carter v. St. John's Reg'l Med. Ctr., 88 S.W.3d 1, 12 (Mo.Ct.App.2002)).  See also Power Soak Sys., Inc. v. Emco Holdings, Inc., 482 F.Supp.2d 1125, 1132 (W.D.Mo. 2007) (citing Dierkes v. Blue Cross & Blue Shield of Mo., 991 S.W.2d 662, 669 (Mo. banc 1999)) ("[E]ven if a party fails to prove actual damages, proof of the existence of a contract and its breach will give rise to nominal damages.").

Importantly, Royal Pacific states that there is "no[] dispute that [Royal Pacific] entered into [the Agreement] with [CMI] with regard to all eight (8) loans that are the subject of this action[.]"  (ECF No. 59 at 1).  Royal Pacific also admits that:  "under the Agreement, CMI can require Royal Pacific to repurchase any loan that CMI, in its sole and exclusive discretion, determines is defective . . . .";[5] "CMI determined that the Loans were underwritten and/or originated based on materially inaccurate information or material misrepresentations or were otherwise defective"; CMI sent letters to Royal Pacific providing notice of the Loans' defects and requiring Royal Pacific to correct or cure the defects; Royal Pacific failed to correct or cure

---

[5] While Royal Pacific acknowledges that the Agreement authorized CMI to demand repurchase of any loans it deemed defective, Royal Pacific argues that "such loan must be owned by CMI for them to be able to sell said loan."  (ECF No. 57-4 at ¶ 13).  The Court will address this argument in the next section.  See supra subsection C.

the Loan defects; CMI sent Royal Pacific letters demanding it honor its repurchase obligations under the Agreement; and Royal Pacific did not repurchase the Loans.   (ECF No. 57-4 at ¶¶ 13, 80, 81, 85, 87, 90).

Royal Pacific opposes CMI's motion for summary judgment on the ground that CMI provided no evidence that it repurchased the Loans, sustained damages, or "reacquired any rights associated with the Loans after they previously sold them[.]"  (ECF No. 59 at 2).   In support of its allegations that it repurchased the Loans from investors Fannie Mae and Freddie Mac, CMI presented:  Ms. Hancock's affidavit, in which she averred that CMI "was required to and did" repurchase the loans from its investors; the investors' citations of the Loans, identifying the Loan defects and demanding repurchase by CMI; and CMI's Repurchase Authorizations, internal documents authorizing CMI's repurchase of the Loans from its investors.[6] (Hancock Aff. at ¶¶ 31-41, Exs. F-9, F-10, G-9, G-10, H-9, H-10, I-9, I-10, J-9, J-10, K-9. K-10, L-9, L-10, M-9, M-10).

This Court need not determine whether CMI demonstrated the absence of a genuine issue of material fact as to damages, because a dispute as to damages does not preclude summary judgment for CMI.  See, e.g., HALO Branded Sols., Inc. v. Goldman, 784 F.Supp.2d 966, 970 (N.D.Ill. 2011) (applying Missouri law).  "In Missouri, it is a fundamental precept of contract

---

[6] Similar evidence was sufficient to support summary judgment for CMI in nearly identical breach of contract actions arising from other correspondents' refusals to repurchase defective loans in violation of the Agreement.  See, e.g., CitiMortgage, Inc. v. Chicago Bancorp, Inc., Case No. 4:12CV246 CDP (E.D.Mo. Mar. 31, 2014), Doc. #203, affirmed, 808 F.3d 747 (8th Cir. 2015), rehearing en banc denied (8th Cir. 2016); CitiMortgage, Inc. v. Axiom Mortg. Bankers Corp., Case No. 4:11CV2240 TIA, 2013 WL 2156269, at *3 (E.D.Mo. May 17, 2013); CitiMortgage, Inc. v. Just Mortg. Inc., Case No. 4:09CV1909 DDN, 2012 WL 3156575, at *10 (E.D.Mo. Aug. 3, 2012).  With its reply in support of the motion for summary judgment, CMI also presented what it described as "notation[s] in CMI's electronic records of a CMI repurchase payment" relating to the Lee, Gonzalez, and Ramirez loans and, with its opposition to Royal Pacific's motion to strike, CMI submitted evidence of CMI's wire transfer payment for the Lopez loan.  (ECF Nos. 65-1 at ¶¶ 4-6, Exs. A-C; No. 72, Ex. A).

law that nominal damages are available where a contract and its breach are established." <u>Hanna v. Darr</u>, 154 S.W.2d 2, 5 n.2 (Mo.Ct.App. 2004). <u>See also</u> <u>G&J Holdings, LLC v. SM Props., LP</u>, 391 S.W.3d 895, 903 (Mo.Ct.App. 2013). Accordingly, CMI is entitled to summary judgment on the question of Royal Pacific's liability for breach of the Agreement.

*C. Effect of foreclosures*

Royal Pacific urges the Court to deny CMI's motion for summary judgment as to the seven Loans foreclosed upon prior to CMI's repurchase demand. Royal Pacific argues that, because seven of the Loans were already foreclosed upon when CMI sent its initial repurchase letters, Section 11 of the Agreement imposed no obligation on Royal Pacific because there was nothing to repurchase. (ECF No. 59). In reply, CMI asserts that Royal Pacific misreads the term "repurchase," as the Agreement "obviously contemplates an alternative situation in which the defective Loan is **not** owned by CMI at the time of repurchase by Royal Pacific." (ECF No. 65 at 3) (emphasis in original).

As previously discussed, Section 11, entitled "Cure or Repurchase," provides CMI the "sole and exclusive discretion" to determine that any loan purchased from Royal Pacific was defective. (ECF No. 49-3, Agreement § 11). Upon notification by CMI, Section 11 required Royal Pacific to "correct or cure such defect within the time prescribed by CMI[.]" (<u>Id.</u>). In the event that Royal Pacific failed to correct or cure the defective loan, the Agreement provided that Royal Pacific "shall, at CMI's sole discretion, either (i) repurchase such defective loan from CMI at the price required by CMI ('Repurchase Price') or (ii) agree to such other remedies. . . as CMI may deem appropriate." (<u>Id.</u>).

The Manual defines "Repurchase Price" as the sum of, among other amounts: "the current principal balance on the loan as of the paid-to date" and "all unreimbursed advances

(*including* but not limited to tax and insurance advances, and/or *foreclosure expenses, etc.*) *incurred in connection with the servicing of the mortgage loan*[.]"  (ECF No. 49-7, Manual at 2301-6) (emphasis added).   Given that the definition of "Repurchase Price" referenced in Section 11 of the Agreement expressly contemplates inclusion of the expenses related to foreclosure on the collateral securing a loan, the Court rejects Royal Pacific's claim that foreclosure precluded repurchase, as that term was used by the parties.[7]

The Court notes that our court rejected a similar argument in Citimortgage, Inc. v. Mason Dixon Funding, Inc., Case No. 4:09CV1997 TCM at 44-45 (E.D.Mo. Oct. 30, 2012).  In that case, CMI filed an action for breach of contract after Mason Dixon refused its demand to repurchase twenty defective loans.  Id. at 1.  In response to CMI's motion for summary judgment, Mason Dixon alleged that CMI failed to state a claim because "CMI has failed to allege it can return the loans at issue or the underlying security interests to Mason."  Id. at 44. The court summarily rejected Mason Dixon's defense, stating:  "Insofar as it goes to CMI's breach of contract claims, it is without merit."  Id.  The court granted CMI's motion for summary judgment as to liability but denied summary judgment as to "whether damages are due and, if so, what and how much they are."  (Id. at 45, 46).

In CitiMortgage, Inc. v. Chicago Bancorp, Inc., Case No. 4:12CV246 CDP, ECF No. 203, (E.D. Mo. March 31, 2014) (affirmed by 808 F.3d 747 (8th Cir. 2015)), our court granted CMI summary judgment on its action for breach of contract as to nine defective loans that Chicago Bancorp refused to cure or repurchase.  Id. at 1-2.  The court held that CMI was entitled to summary judgment in the amount of the Repurchase Price for the nine loans.  Id. at 44.  With

---

[7] Royal Pacific also argues that the Repurchase Price formula does not apply to a foreclosed loan because it includes "the current principal balance" and, once a loan is foreclosed, the "loan is extinguished" and "there can be no 'current principal balance.'"  (ECF No. 59 at 7-8) (quoting Manual at § 2301).  However, it appears that, where a loan property was foreclosed, the "current principal balance" equaled the balance owed at the time of foreclosure.

respect to two of those loans, the court noted that CMI "still owns two of the properties securing the mortgage loans," and therefore directed CMI "in accordance with Section 11 of the Agreement, . . . to release to Chicago Bancorp its interest in those properties upon receipt of the Repurchase Price."[8] Id. at 45. In the court's final judgment, it ordered CMI to release its interest in the secured property, "if that property has not been sold as of the date of the judgment, or . . . credit against the judgment the amount of any proceeds from the sale of the property, if it has been sold." CitiMortgage v. Chicago Bancorp, Inc., Case No. 4:12CV 246 CDP, ECF No. 238 (January 23, 2015). See also CitiMortgage v. Chicago Bancorp, Inc., Case No. 4:14CV1278 AGF, 2016 WL 3958594, at *4 (E.D.Mo. July 22, 2016). Foreclosure upon the defective loans did not preclude the Court from enforcing Chicago Bancorp's obligation to "repurchase" the loans.

Given that the formula to calculate the Repurchase Price of a defective loan referenced in Section 11 of the Agreement included any unreimbursed foreclosure expenses, the Court rejects Royal Pacific's claim that foreclosure precludes CMI's recovery on the loans in an action for breach of Section 11. As the Eighth Circuit previously stated in a factually similar case: "The [A]greement was the result of an arm's length negotiation between two sophisticated commercial entities. By entering into it, [Defendant] knowingly accepted the risk set forth by the plain language therein[.]" CitiMortgage, Inc., 808 F.3d at 754. In this case, Royal Pacific accepted the risk that it would be contractually obligated to "repurchase" defective loans despite a foreclosure sale of the collateral. The Court therefore finds that the foreclosures related to the

---

[8] Upon motion for reconsideration, the Court found that one of the two loans was not defective and vacated the portion of its order granting CMI summary judgment as to that loan. CitiMortgage, Inc. v. Chicago Bancorp, Inc., Case No. 4:12CV 246 CDP, ECF No. 219 (E.D.Mo. Sept. 8, 2014).

seven loans do not preclude summary judgment for CMI on its breach of contract claim with regard to those loans.[9]

### D. *Affirmative Defenses*

In its memorandum in opposition to CMI's motion for summary judgment, Royal Pacific alleges that CMI failed to mitigate its damages in that CMI's damages with respect to six of the eight Loans were not reasonably incurred.[10]  (ECF No. 59 at 9).  Essentially, Royal Pacific seeks to diminish the amount of any recovery based upon actions or inaction taken by CMI.  In response, CMI asserts that the "Eighth Circuit has rejected affirmative defenses based on a purported obligation of CMI to mitigate its damages, and Royal Pacific is not entitled to the same defense it claims here."  (ECF No. 65 at 10).

Under Missouri law, "one damaged by breach of contract must make reasonable efforts to minimize resulting damages."  Graham Constr. Servs. v. Hammer & Steel Inc., 755 F.3d 611, 619 (8th Cir. 2014) (quoting Richardson v. Collier Bldg. Corp., 793 S.W.2d 366, 375 (Mo.Ct.App. 1990)).  However, a duty to mitigate does not override a contract term requiring or promising payment.  See Bancorp, Inc., 808 F.3d at 754.  See also 22 Am. Jur. 2d Damages § 362 (May 2016) ("An obligation to minimize avoidable consequences does not exist if the plaintiff has a vested contract right to recover the amount sought.").

In Bancorp, Inc., defendant Bancorp appealed the district court's grant of summary judgment for CMI as to eight defective loans.  808 F.3d at 750.  Bancorp argued, among other

---

[9] Having found that CMI may enforce its rights under Section 11, the Court declines to address Royal Pacific's argument that CMI's only recourse with regard to the seven foreclosed loans was found in Section 10 of the Agreement, entitled "Indemnification." (ECF No. 59 at 8).

[10] Federal Rule of Civil Procedure 8(c) requires that a party "must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8(c)(1). Although failure to mitigate damages is not among the affirmative defenses listed in Rule 8(c), federal courts have construed it as an affirmative defense that a party must plead at risk of waiver. Sayre v. Musicland Group, Inc. v. a Subsidiary of Am. Can Co., 850 F.2d 350, 354 (8th Cir. 1988).

things, that the district court erred in granting summary judgment in favor of CMI on two of the loans because "genuine issues of material fact exist with respect to the appropriate calculation of the repurchase price under the agreement." Id. at 753.  Specifically, Bancorp argued that CMI's unreasonable delay in disposing of the properties increased the repurchase price.  Id.  The Eighth Circuit rejected Bancorp's argument because the Agreement required Bancorp to repurchase defective loans on demand and for the amount determined by application of the Repurchase Price formula.  Id. at 753-54.  The Court concluded:  "The damage-limiting doctrines cited by Bancorp do not trump the plain, unambiguous, and bargained-for language of the agreement."  Id. at 754. In light of the Eighth Circuit's holding in Bancorp, Inc., Royal Pacific's affirmative defense based on CMI's duty to mitigate damages fails.

Royal Pacific also argues that Missouri's five-year statute of limitations on actions arising from breach of contract precluded CMI's claim based upon Royal Pacific's refusal to repurchase the Barragan loan.  (ECF No. 59 at 13).  CMI counters that the applicable statute of limitations was ten years[11] and, in any event, CMI filed the lawsuit within five years "of the breach triggering the running of that statute."  (ECF No. 65 at 16).

Missouri law requires a party to file an action upon a contract within five years "after the cause[] of action shall have accrued[.]"  Mo. Rev. Stat. §§ 516.100, 516.120(1).  Section 516.100 provides that a cause of action accrues not "when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment."  Mo. Rev. Stat. § 516.100.  "[D]amages are 'sustained and capable of ascertainment' when the fact of damage can be discovered or made known.'"  Great Plains Trust

---

[11] Under Section 516.110(1), "[a]n action upon any writing, whether sealed or unsealed, for the payment of money or property" shall be filed within ten years after the cause of action accrued. Mo. Rev. Stat. § 516.110(1).  Because the instant action was filed within five-years of the date that the cause of action accrued, the Court need not determine whether the five- or ten-year statute of limitation applied.

Co. v. Union Pac. R. Co., 492 F.3d 986, 992 (8th Cir. 2007) (quoting Jordan v. Willens, 937 S.W.2d 291, 294 (Mo.Ct.App. 1996) (emphasis omitted)).  "[I]n a breach-of-contract suit, the cause of action 'accrues upon a defendant's failure to do the thing at the time and in the manner contracted.'"  Id. (quoting Davis v. Laclede Gas Co., 603 S.W.2d 554, 555 (Mo. banc 1980) (citation and quotations omitted)).

Here, CMI's Initial Repurchase Letter notifying Royal Pacific of the defects in the Barragan loan and demanding its repurchase, was dated August 8, 2011.  Royal Pacific's failure to repurchase the Barragan loan within thirty days of the date of that letter triggered the running of the statute of limitations.  See Chicago Bancorp, Inc., Case No. 4:14CV1278 AGF, Doc. No. 323 at 15 (E.D. Mo. June 16, 2016) ("A claim for breach of that [Section 11] contractual obligation does not accrue until Chicago Bancorp, after receiving notice and an opportunity to cure, fails to cure or repurchase the defective loan.").   CMI filed its complaint on February 16, 2016, within five years of the date upon which the action accrued.  (ECF No. 1).  Accordingly, the statute of limitations does not preclude CMI's action for breach of the agreement to repurchase the Barragan loan.

Finally, Royal Pacific contends that CMI is not entitled to summary judgment on the Elghazawi loan because Section 2 of the Agreement relieves Royal Pacific of the obligation to repurchase that loan.  (ECF No. 59 at 15).  Section 2 of the Agreement contains Royal Pacific's representations and warranties.  (ECF No. 49-3, Agreement § 2).  In subsection 2(i), Royal Pacific represents and warrants that:

> neither this Agreement nor any statement, report or other information provided or to be provided pursuant to this Agreement (including but not limited to the statements and information contained in the documentation for each Loan purchased by CMI) contains or will contain any misrepresentation or untrue statement of fact or omits or will omit to state a fact necessary to make the information not misleading.

(Id.).   However, Section 2(i) exempts from this representation and warranty "information obtained from (i) appraisers, escrow agents, title companies, closers, credit reporting agencies or any other entity approved by CMI . . . ."  (Id.).

According to Royal Pacific, the Elghazawi Loan was a home loan, but there was no home on the lot securing it.  (Id. at 14; ECF No. 59-2, ¶ 21).  Royal Pacific maintains that the failure to discover the absence of a house on the lot securing the Elghazawi Loan was the fault of the title company, appraiser, and/or seller and, as a result, Royal Pacific had no obligation to repurchase that Loan.

This court previously held that "Section 11 sets forth an independent obligation that is not dependent upon or derivative of, for instance, Section 2's representations and warranties." Chicago Bancorp, Inc., Case No. 4:14CV1278 AGF, Doc. No. 323 at 17 (E.D.Mo. June 16, 2016).  Section 2(i) is "breached when a correspondent knows or should have known that loan documents contain misstatements, misrepresentations, or omissions but nonetheless submits the defective documents to CitiMortgage." CitiMortgage v. Just Mortg. Inc., Case No. 4:09CV1909 DDN, Doc. No. 187 at 22, (E.D.Mo. March 29, 2012).  Section 11 sets forth the circumstances under which CMI can demand repurchase of a loan and "is breached when a correspondent fails to cure or repurchase the loan, and applies regardless of the correspondent's knowledge."  Id. See also CitiMortgage, Inc. v. Reunion Mortg., Inc., Case No. 4:10CV1632 RWS, 2012 WL 5471165, at *7 (E.D.Mo. Nov. 9, 2012).

The present action arose from Royal Pacific's breach of Section 11, pursuant to which Royal Pacific agreed to cure or repurchase a loan upon CMI's determination that the loan was underwritten or originated based on a misstatement, misrepresentation, or omission. The

exemptions in Section 2(i), relating to warranties and representations, do not apply to an action arising under Section 11's obligation to cure or repurchase.

### E. Calculation of damages

CMI claimed that its losses resulting from Royal Pacific's failure to repurchase the Loans totaled $1,356,141.30. (ECF No. 49, CMI's Statement of Uncontroverted Facts at ¶ 105; ECF No. 49-2, Hancock aff. at ¶126). Royal Pacific challenged CMI's calculation of damages, arguing that CMI included costs and fees to which it was not entitled. (ECF No. 59). In support of its argument and its statement of additional facts concerning the damages calculation, Royal Pacific submitted the declaration of Linda Melville, Royal Pacific's compliance/quality control manager. (ECF No. 59-2, Melville dec.). For example, in her declaration, Ms. Melville averred that, with regard to the Elghazawi Loan, CMI improperly included a "cash for keys" fee and cleaning fee, even though the property was a dirt lot, and a charge for trash removal, which was not performed. (ECF No. 59-2, Melville dec. at ¶ 21). Ms. Melville also stated, in regard to the Lee Loan, that "payments were being made for mortgage insurance even after the mortgage insurance had been cancelled." (ECF No. 59-2, Melville dec. at ¶ 29).

The Court finds that Royal Pacific has, by Ms. Melville's declaration, set forth specific facts showing that a genuine issue of material fact exists with regard to the amount of damages. Because a genuine issue of material fact remains as to the amount of CMI's damages, the Court denies summary judgment on that issue.

### V. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Royal Pacific's motion to strike CMI's supplemental affidavit submitted with its reply in support of its motion for summary judgment (ECF No. 68) is **DENIED**.

**IT IS FURTHER ORDERED** that CMI's motion for summary judgment (ECF No. 46) is **GRANTED** as to liability and **DENIED** as to damages.

**IT IS FINALLY ORDERED** that the Court shall hold a final pretrial conference at 10:00 a.m. on October 19, 2017.  The parties are reminded that this matter is set for a jury trial at 9:00 a.m. on October 23, 2017.  (ECF No. 79).  All terms and provisions of the case management order (ECF No. 22) regarding the trial remain in full force and effect.


PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of July, 2017